UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTNET INC., a Michigan non-profit corporation, | Case No. 2:24-cv-11561-DPH-DRG |
| Plaintiff, | Hon. Denise Page Hood |
| v. | Magistrate Judge David R. Grand |
| CITY OF TAYLOR | |
| Defendant. | |

Adam J. Brody (P62035)
Neil E. Youngdahl (P82452)
Varnum LLP
*Co-Counsel for Plaintiff*
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
ajbrody@varnumlaw.com
neyoungdahl@varnumlaw.com

Aaron T. Speck
LAW OFFICE OF AARON T. SPECK
*Co-Counsel for Plaintiff*
20619 Ecorse Rd.
Taylor, MI 48180
(313) 381-9000
aaron@alllegalsolutions.com

**PLAINTIFF'S EMERGENCY MOTION FOR IMMEDIATE
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**\*\* EXPEDITED CONSIDERATION REQUESTED \*\***

Plaintiff, ChristNet Inc. ("ChristNet"), by and through its counsel, Aaron T. Speck and Varnum LLP, respectfully moves this Court for the entry of an immediate temporary restraining order and preliminary injunction for the reasons set forth in the accompanying brief and ChristNet's Verified Complaint, which are incorporated herein by reference.

Expedited consideration is necessary because Defendant has informed ChristNet that its business license will be revoked effective June 16, 2024, and ChristNet will suffer irreparable harm as a result without adequate remedy at law, as more fully set forth in the accompanying brief and ChristNet's Verified Complaint.

WHEREFORE, ChristNet respectfully requests that the Court:

A. Enter a temporary restraining order that prevents Defendant from revoking ChristNet's business license on June 16, 2024;

B. Order Defendant to Show Cause why a preliminary injunction should not issue; and

C. Order such other and further relief as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

A proposed Order is attached as **Exhibit 1**.

    Respectfully submitted,

    VARNUM LLP
    Attorneys for Plaintiff

Date: June 13, 2024    By: ___/s/ Adam J. Brody_____
    Adam J. Brody (P62035)
    Neil E. Youngdahl (P82452)
    BUSINESS ADDRESS & TELEPHONE:
    Bridgewater Place
    P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    ajbrody@varnumlaw.com
    neyoungdahl@varnumlaw.com

2

                                              Aaron T. Speck
                                              20619 Ecorse Rd.
                                              Taylor, MI 48180
                                              (313) 381-9000
                                              aaron@alllegalsolutions.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTNET INC., a Michigan non-profit corporation, | Case No. 2:24-cv-11561-DPH-DRG |
| Plaintiff, | Hon. Denise Page Hood |
| v. | Magistrate Judge David R. Grand |
| CITY OF TAYLOR | |
| Defendant. | |

Adam J. Brody (P62035)
Varnum LLP
*Co-Counsel for Plaintiff*
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
ajbrody@varnumlaw.com
neyoungdahl@varnumlaw.com

Aaron T. Speck
LAW OFFICE OF AARON T. SPECK
*Co-Counsel for Plaintiff*
20619 Ecorse Rd.
Taylor, MI 48180
(313) 381-9000
aaron@alllegalsolutions.com

**BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR IMMEDIATE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**\*\* EXPEDITED CONSIDERATION REQUESTED \*\***

**I.     INTRODUCTION**

Plaintiff, ChristNet Inc. ("ChristNet"), is a non-profit organization that operates a day center in the City of Taylor, where it provides resources for homeless and impoverished individuals. ChristNet is, in many ways, the last source of hope for the homeless population in the City of Taylor and, indeed, western Wayne County generally. Despite this, the City's mayor and its City Council—without factual justification and without following the procedures set out in its own Ordinances—recently decided to shut ChristNet down, revoking its business license and threatening retribution against ChristNet if it continues to operate after June 16, 2024.

The City's actions have deprived ChristNet of its Constitutional right to both procedural and substantive due process and, if left intact by this Court, the City's revocation of ChristNet's business license will have a substantial, devastating, and irreparable impact on both ChristNet and the homeless population of western Wayne County. As such, this Court's immediate intervention is required, to preserve the status quo while the merits of this dispute are fully resolved.

**II.    FACTUAL BACKGROUND**

ChristNet, a Michigan non-profit corporation originally known as "The Taylor Warming Center," was founded by nine churches thirty-two years ago. Verified Compl. ¶ 6. For the past three decades, ChristNet has been providing services to homeless and impoverished individuals throughout Wayne County at various locations. *Id.* ¶ 7.

On August 9, 2022, ChristNet received a certificate of occupancy from the City of Taylor (attached to the Verified Complaint as **Exhibit A**), approving its "commercial" occupancy of the property located at 25275 Eureka Road, Taylor, Michigan 48180. *Id.* ¶ 8. Then, on September 24, 2023, ChristNet received a business license from the City of Taylor (attached to the Verified Complaint as **Exhibit B**), approved by Mayor Tim Woolley and Taylor City Clerk Cynthia A. Bower. *Id.* ¶ 9. Set to expire on September 25, 2025, this business license allows ChristNet to

1

operate a facility providing "NON PROFIT EMPLOYMENT SERVICES AND RELATED RESOURCE[S]." *Id.* ¶ 10.

ChristNet primarily operates a daytime program at this facility. *Id.* ¶ 14. The services ChristNet provides are wide-reaching—including three daily meals, showers and hygiene support, laundry facilities, identification assistance, referral services for housing, employment, and medical care, internet access, transportation to medical appoints, job interviews, and social services, along with educational and motivational programs. *Id.* ¶ 11. ChristNet also provides guests with off-site overnight lodging at partnering churches during the winter, as well as additional off-site lodging year-round for some guests through its partnership with an organization known as Wayne-Metropolitan Community Action Agency ("Wayne Metro"). *Id.* ¶ 14. ChristNet has partnered with Wayne-Metro for over fifteen years—sharing case management services provided to guests of ChristNet and funding some of the transportation for ChristNet guests during the day. *Id.* ¶ 15. ChristNet remains the only private non-profit organization in all of Wayne County that survived the COVID-19 pandemic and continues to provide day services and support to homeless individuals. *Id.* ¶ 19. As such, Defendant has been aware of ChristNet's vital community services and has even historically relied on ChristNet by referring people in need to the facility for aid and assistance. *Id.* ¶ 13.

Though ChristNet began occupying its current building on Eureka Road in September 2022, ChristNet had purchased the property in 2013 and had been performing renovations on the building for many years prior. *Id.* ¶ 16. As the cost of the final renovations began to rise as a result of COVID-19, an agreement was reached between ChristNet and Wayne-Metro—wherein ChristNet deeded the property to Wayne-Metro. *Id.* ¶ 17. This agreement funded the renovation project to completion in exchange for a lease back to ChristNet for $1.00/year for ten years, and

renewable for an additional ten years. *Id.* A copy of the Commercial Property Lease is attached to the Verified Complaint as **Exhibit C**. This lease took effect on its own terms at the time the Certificate of Occupancy was issued on August 9, 2022. *Id.* ¶ 18.

However, on April 8, 2024, in a letter signed by Mayor Woolley and City Clerk Bower (attached to the Verified Complaint as **Exhibit D**), Defendant revoked ChristNet's business license, purportedly effective May 13, 2024. *Id.* ¶ 20. This revocation letter stated that "the operation of ChristNet in Taylor has been a detriment to the health, safety and welfare of the residents and businesses that live and operate in the surrounding area," and that "[t]he City Administration…ha[s] attempted to work with ChristNet to resolve these problems, but these issues continue unabated." *Id.* ¶ 21. This is simply not true. To the contrary, Defendant never previously communicated with ChristNet or provided prior notice of these "problems" to anyone in ChristNet's executive office. *Id.* ¶ 22.

Further, at no time prior to the issuance of this letter of revocation did Mayor Woolley or anyone in the Taylor City Administration advise ChristNet of the requirements of Section 10-23 of the City's Code of Ordinances—which requires a hearing before the mayor before a business license may be properly revoked. *Id.* ¶ 24. Section 10-23 of the City's Code of Ordinances provides as follows, in relevant part:

> Licenses requested pursuant to this chapter may be refused by the city clerk and licenses that have been issued may be revoked and/or suspended by the mayor or city clerk at any time after a hearing before the mayor for any of the following causes:
>
> (3) Conducting a business in an unlawful manner or in such manner as to constitute a breach of the peace or to constitute a menace to the health, morals, safety or welfare of the public[.]

*Id.* ¶ 25. Contrary to the requirements of this Ordinance, the April 8, 2024, revocation letter—which was not postmarked until April 22, 2024, and not received by ChristNet until April 24,

3

2024—was ChristNet's first notice of Defendant's allegations that ChristNet was conducting its operations in such a manner.  *Id.* ¶¶ 26–27.

As a result, pursuant to Section 10-25 of the City's Code of Ordinances, ChristNet filed a timely appeal of the City's decision to revoke its license and requested a hearing before the City Council (attached to the Verified Complaint as **Exhibit E**).  *Id.* ¶ 25.  Defendant subsequently scheduled an appeal hearing for May 21, 2024, before the City Council (attached to the Verified Complaint as **Exhibit F**).  *Id.* ¶ 29.

Due to its lack of prior notice of problems perceived by the City, and now facing an appeal of the Defendant's decision to revoke ChristNet's license, ChristNet made a Freedom of Information Act ("FOIA") request to the City, seeking all information regarding the decision to terminate ChristNet's license.  *Id.* ¶ 30.  The FOIA documents obtained revealed that the City and Wayne-Metro had been engaged in a dialogue regarding ChristNet's operations for over a year. *Id.* ¶ 32.  In these conversations, Defendant and Wayne-Metro discussed the receipt of alleged complaints about ChristNet and whether it could be argued that ChristNet was in breach of its lease.  *Id.* ¶¶ 31–32.  However, the City and Mayor Woolley never investigated the truth of any of the allegations received about ChristNet or provided ChristNet with an opportunity to address these complaints.  *Id.* ¶ 33.  The FOIA documents also revealed photographs of mounds of garbage and debris scattered in wooded areas, however the locations of these photographs remain unspecified. *Id.* ¶ 34.  Thus, it became apparent to ChristNet that Defendant was blaming ChristNet for every blighted area that homeless individuals may have been occupying in the City, even though they may be located blocks or even miles away from the day center. *Id.* ¶ 35.

On May 21, 2024, at the time set for the appeal hearing before City Council regarding the decision to revoke ChristNet's business license, Defendant, by and through the City Council and

Mayor Woolley, provided ChristNet officers and its legal counsel a mere three minutes of allotted time per person to address the appeal. *Id.* ¶ 36. Defendant then opened additional three-minute time slots after a break for anyone wishing to speak a second time, and ChristNet and its legal counsel were able to at least avail themselves of an additional, yet limited, three minutes to speak. Id. ¶ 37. After this inadequate appeal hearing, at which ChristNet was given no meaningful opportunity to participate, the City Council upheld the decision to revoke ChristNet's business license. *Id.* ¶ 38.

Finally, in a letter from Mayor Woolley dated June 3, 2024, ChristNet and the President of ChristNet's Board of Directors, Rickie Rickman, were notified that ChristNet's license to operate at 25275 Eureka Road, Taylor, Michigan 48180 would be officially "revoked as of the close of business on Sunday, June 16, 2024." *Id.* ¶ 39. In this letter, ChristNet and Ms. Rickman were also notified that "[c]ontinuing to operate after that date without a license will be in violation of the City of Taylor Ordinances." *Id.* ¶ 40. Thus, ChristNet was urged to "take the necessary steps to communicate the pending closure" of its facility. *Id.* ¶ 41.

### III. LAW AND ARGUMENT

#### A. LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65(b) requires the Court to examine, on application for a temporary restraining order, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Similarly,

5

"[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch,* 451 U.S. 390 (1981).

The linguistic distinction between a temporary restraining order and preliminary injunction is largely academic because "the same factors apply to both." *Perez-Perez v. Adduci*, 459 F. Supp. 3d 918, 924 (E.D. Mich. 2020). The practical distinction is that "TROs are of a short duration and usually terminate with a ruling on a preliminary injunction." *Id.*

Given the limited purpose of preliminary injunctive relief and "the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Camensich*, 451 U.S. at 395. Accordingly, a party "is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Id.*

When deciding whether to grant a request for injunctive relief, a court should consider and balance four factors:

> (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.

*Six Clinics Holding Corp.*, 119 F.3d at 399 (6th Cir. 1997). These four factors "are not prerequisites that must be established at the outset but are interconnected considerations that must be balanced together." *Id.* at 400.

### 1. ChristNet Is Likely To Prevail On The Merits.

The first factor to consider is whether the plaintiff has demonstrated "a strong likelihood of success on the merits." *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). A party

"is not required to prove his case in full at a preliminary injunction hearing." *Camenisch,* 451 U.S. at 395.  "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp.,* 119 F.3d at 402 (6th Cir.1997).  Thus, ChristNet need only raise serious and substantial questions as to whether Defendant violated ChristNet's procedural due process rights and/or substantive due process rights under the Fourteenth Amendment to demonstrate that ChristNet is likely to prevail on the merits of its claim for purposes of awarding injunctive relief.

> **a)** **Defendant violated ChristNet's procedural due process rights under the Fourteenth Amendment of the U.S. Constitution.**

Under the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The U.S. Court of Appeals for the Sixth Circuit has held that "[w]hen evaluating a claim alleging a property deprivation without [procedural] due process, we [must] first determine whether due process applies." *Johnson v. Morales*, 946 F.3d 911, 921 (6th Cir. 2020) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "If it does, we then determine what process is due." *Id*.

Similar to *Johnson*, in which the City of Saginaw suspended plaintiff's business license out of concern for safety and welfare without a pre-deprivation hearing, here, Defendant's revocation of ChristNet's business license is "enough to invoke due process protection." *Id.*  (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971); *see also United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 486 (6th Cir. 2014)).

With respect to what process ChristNet is due, the *Johnson* court explained that "[a]lthough 'the requirements of due process are fluid and fact dependent,' *Shoemaker v. City of Howell*, 795

7

F.3d 553, 559 (6th Cir. 2015), '[t]he point of procedural due process is to require procedural fairness and to prohibit the state from conducting unfair or arbitrary proceedings[.]'" *Id.* at 936. (citing *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016)) (quoting *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740-41 (6th Cir. 2015)). In order to effectuate those purposes, "due process requires that an aggrieved party be afforded a hearing conducted 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). As a result, this Court must look to "substance, not to bare form, to determine whether constitutional minimums have been honored." *Bell v. Burson*, 402 U.S. 535, 541 (1971).

In this case, Defendant's first procedural failure was that it utterly failed to provide ChristNet any hearing in front of the mayor—as required by City Code of Ordinance Section 10-23—before it revoked ChristNet's business license out of alleged safety and welfare concerns. Due process "require[s] a meaningful opportunity to be heard in order to 'prevent, to the extent possible, an erroneous deprivation of property.'" *Johnson*, 946 F.3d at 937 (quoting *Garcia*, 782 F.3d at 741). ChristNet was given no opportunity, let alone a meaningful one, to present its case before the mayor. This was in clear violation of ChristNet's procedural due process rights.

ChristNet's procedural due process rights were then violated a second time, when Defendant failed to provide ChristNet with a meaningful post-deprivation appeal hearing, in accordance with Section 10-25 of the City Code of Ordinances. In the employment termination context, where individuals have similarly been deprived of their livelihoods, courts have stated that "the post termination hearing is where the definitive fact-finding occurs." *West v. Grand Cnty.*, 967 F.2d 362, 369 (10th Cir. 1992). Thus, 'procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood.'" *Id.* at 369.

8

In providing ChristNet representatives and counsel only six minutes to defend their position and challenge the validity of Defendant's revocation, ChristNet received virtually no opportunity to challenge the factual basis for the City's action or the deprivation of the livelihoods of those who work and volunteer at ChristNet.  Further, this "appeal hearing" did not allow for the testimony of witnesses and did not occur before a court reporter for purposes of developing a factual record.  Thus, it is clear that this proceeding, too, failed to meet the "meaningful manner" standard required of it—again violating ChristNet's procedural due process rights.  *See Johnson*, 946 F.3d at 921.

### b) **Defendant violated ChristNet's substantive due process rights under the Fourteenth Amendment of the U.S. Constitution.**

This Court has stated that "[s]ubstantive due process is '[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'"  *Boulevard & Trumbull Towing, Inc. v. City of Detroit*, 393 F. Supp. 3d 640, 648 (E.D. Mich. 2019) (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)).  To successfully state a claim for a violation of substantive due process, "a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest."  *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

As noted above, the U.S. Court of Appeals has found that a business license is a valid property interest.  *See Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020).  Thus, in determining whether ChristNet's substantive due process rights have been violated, this Court must assess whether the Defendant's challenged action was "arbitrary and capricious." *Andreano v. City of Westlake*, 136 F. App'x 865, 870-71 (6th Cir. 2005).  Specifically, the U.S. Court of Appeals for the Sixth Circuit has noted that there are "various contexts in which courts have found that

9

substantive due process is violated—including that the action was 'willful and unreasoning,' 'shocks the conscience,' was 'extreme[ly] irrational[ ],' or lacks 'some factual basis.'" *City of Saginaw*, 980 F.3d at 513 (citing *Johnson*, 946 F.3d at 937 n.4) (quoting *City of Grand Blanc*, 961 F.2d at 1221-22).

No matter which of the various contexts are applied by this Court, it is clear that Defendant's revocation of ChristNet's business license violated ChristNet's substantive due process. In *Johnson*, the City alleged to have suspended the plaintiff's business "based upon factual findings that (1) it was [plaintiff's] business that was causing or 'generat[ing]' [] violence, and (2) [plaintiff] failed to take adequate measures to prevent that violence." *Johnson*, 946 F.3d at 938. Further, "Defendants contend[ed] that the suspension was rational 'to protect the health and safety of the Plaintiff and the citizens of Saginaw from the violent activity that was taking place *in connection with* Plaintiff's business.'" *Id.*

The Sixth Circuit disagreed, finding found that "[s]uspending [plaintiff's] business license because of unlawful acts of unaffiliated persons of which [plaintiff] had no prior notice qualifie[d] as extremely irrational." *Id.* Remanding for further proceedings on plaintiff's substantive due process claim, the court held that "suspending [plaintiff's] license [could be] rational only if [plaintiff] and her business somehow caused or contributed to the violence." *Id.*

Here, ChristNet has a similar claim for violation of substantive due process. Based on documents obtained via a FOIA request, the City seemingly based its decision to revoke ChristNet's license on the existence of homeless encampments set up in unspecified locations and continuous 911 calls from third-party homeless individuals. Yet, because ChristNet had no prior notice of these incidents, and further because none of these incidents stem directly from ChristNet's

10

operations or even occurred on ChristNet's property, the City's decision to revoke ChristNet's license is clearly arbitrary and capricious.

Moreover, Defendant's actions make no logical sense. That is, Defendant ostensibly revoked ChristNet's business license because of the presence and actions of the homeless population in Taylor. <u>But shutting down ChristNet will only make the situation worse</u>. As noted above, ChristNet is the only facility to which the homeless population in Taylor can turn for support. Taking away that final source of assistance can only make the situation worse, not better. If this Court does not grant the requested relief, the rights of homeless individuals in the community will be severely aggrieved. Such a scenario surely reaches the level of "shock[ing] the conscience." Typically, "conduct that 'shocks the conscience' is conduct that is so brutal and offensive that it does not comport with traditional notions of fair play and decency." *Boulevard*, 393 F. Supp. 3d at 649 (E.D. Mich. 2019) (quoting *Puckett*, 566 Fed. App'x at 472 (6th Cir. 2014)). Thus, if Defendant is not prevented from revoking ChristNet's business license on June 16, 2024, the impoverished in Taylor and western Wayne County will be stripped of their last remaining access to day services and support.

In sum, ChristNet is likely to prevail on its claims for violation of both its procedural and substantive due process rights. Accordingly, this factor weighs strongly in favor of granting injunctive relief.

### 2. **ChristNet Will Suffer Irreparable Harm If Injunctive Relief Is Denied.**

The second factor to be considered in deciding whether to grant injunctive relief is whether the harm to be suffered is irreparable. *See Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). The Sixth Circuit has made clear that the "denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's

11

constitutional rights." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed.").

Here, ChristNet's property interest in its business license invokes due process protection. *See Johnson*, 946 F.3d at 921. Thus, because Defendant seeks to revoke ChristNet's license without providing proper due process through meaningful hearings before the mayor and the City Council, ChristNet's irreparable injury in this case can be presumed. Yet, aside from just the impairment of ChristNet's constitutional rights, the harm that would be inflicted by Defendant's actions cannot be remedied by damages alone—including the harm to ChristNet's reputation and goodwill and the deprivation of the livelihoods of ChristNet's employees and volunteers.

As one court has explained, "reputation…is difficult to restore once it has been tainted." *Mercy Health Servs. v. 1199 Health & Hum. Serv. Emps. Union*, 888 F. Supp. 828, 838 (W.D. Mich. 1995); *see also, Chem-Trend, Inc. v. McCarthy*, 780 F. Supp. 458, 461 (E.D. Mich. 1991). As the Sixth Circuit has noted, "interference with customer relationships and damage to reputation are precisely the sorts of injuries [that] are difficult to quantify monetarily, and thus constitute irreparable harm." *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503–04 (6th Cir. 2022).

In this case, the dozens of daily guests that depend on ChristNet for essential services such as food, shelter, and medical care will begin to view the non-profit as unreliable if its operations suddenly cease. This can lead to a loss of trust and goodwill, making it difficult for ChristNet to re-establish these vital community connections if and when the day center is able to reopen. Further, those who donate to and partner with ChristNet will likely question the facility's stability if it is forced to suddenly close—leading to reduced financial support in the future. Similarly, the

many community-members who serve ChristNet year-round will likely also lose confidence in the organization's ability to continue its mission, resulting in a decrease of future volunteer participation, depriving current volunteers and employees of their livelihoods, and impacting ChristNet's future operational capacity.

As the foregoing amply demonstrates, the harm to ChristNet should it be shut down on June 16 is substantial, and it is irreparable. As such, this factor also weighs in favor of granting the requested injunctive relief.

### 3. The Balancing Of The Harm Weighs In Favor Of Injunctive Relief.

An order preventing Defendant from revoking ChristNet's business license on June 16, 2024, will not harm Defendant. Rather, such an order will merely compel Defendant to refrain from taking any action prior to meaningful and proper compliance with Sections 10-23 and 10-25 of the Code of Ordinances, including having a legitimate factual basis for any actions that it takes.

By contrast, as detailed above, ChristNet will suffer significant, irreparable harm if its business license is revoked on June 16, 2024. Accordingly, this factor weighs in favor of granting the injunctive relief requested by ChristNet.

### 4. An Injunction Is In The Public Interest.

The public interest, too, undoubtedly weighs in favor of injunctive relief. Through its day center operations, ChristNet provides 50-75 men, women, and children in Wayne County daily access to resources and support. In fact, ChristNet served 16,465 meals this year through May 15, 2024, alone. If ChristNet is prevented from operating the day center, the homeless population in the community will lose access not only to these meals and other necessities, but also to the

network of services that ChristNet provides geared toward helping individuals obtain employment, medical services, and more stable housing.

Because ChristNet is a "refuge from the streets," where guests can visit without fear or trepidation, the closure of the day center would strip ChristNet's guests of critical security, socialization, and a structured environment.  Further, if ChristNet's operations are shuttered, guests of the facility who are, at times, drug and alcohol dependent will lose access to referrals to the National Intake Center and other agencies.  Likewise, ChristNet's guests would lose critical access to referrals to Adult Protective Services which become necessary when assisting individuals who may have been taken advantage of or abused by family, friends, or caretakers.

As the only private non-profit organization in all of Wayne County that continues to provide day services and respite to those in need, the closure of ChristNet would lead the homeless back toward the streets as their only alternative—exacerbating the instability of the impoverished in Taylor and western Wayne County and causing true concern for health, safety, and welfare. Denying the requested relief would cause cascading injury to the homeless in Taylor and western Wayne County and to the safety and welfare of the community as a whole.

In sum, there can be no doubt that the entire public has a strong interest in ChristNet remaining in operation.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motions for Immediate Temporary Restraining Order and Preliminary Injunction should be granted.

                                  Respectfully submitted,

                                  V<small>ARNUM</small> LLP
                                  Attorneys for Plaintiff

Date: June 13, 2024                      By:   /s/ Adam J. Brody
                                  Adam J. Brody (P62035)
                                  Neil E. Youngdahl (P82452)
                                BUSINESS ADDRESS & TELEPHONE:
                                  Bridgewater Place
                                  P.O. Box 352
                                  Grand Rapids, MI 49501-0352
                                  (616) 336-6000
                                  ajbrody@varnumlaw.com
                                  neyoungdahl@varnumlaw.com

                                  Aaron T. Speck
                                  20619 Ecorse Rd.
                                  Taylor, MI 48180
                                  (313) 381-9000
                                  aaron@alllegalsolutions.com