UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTNET INC., a
Michigan non-profit corporation,

        Plaintiff,

v.

CITY OF TAYLOR,

        Defendant.

Case No. 2:24-cv-11561
Hon. Denise Page Hood

---

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 2)

Defendant, CITY OF TAYLOR, through its attorneys, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., responds in opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 2) for the reasons stated in the accompanying Brief in Support of this Response.

WHEREFORE, Defendant, CITY OF TAYLOR, respectfully requests that this Honorable Court DENY Plaintiff's Motion for Preliminary Injunction, and grant any other relief deemed appropriate.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH
  & AMTSBUECHLER PC

 /s/ Matthew J. Zalewski
Matthew J. Zalewski (P72207)
Attorneys for Defendant
27555 Executive Drive, Suite 250
Farmington Hills, MI  48331-3550
(248) 489-4100
mzalewski@rsjalaw.com

Dated:  July 10, 2024

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTNET INC., a
Michigan non-profit corporation,

              Case No. 2:24-cv-11561

  Plaintiff,          Hon. Denise Page Hood

v.

CITY OF TAYLOR,

  Defendant.

_____

**BRIEF IN SUPPORT OF**
**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 2)**

## STATEMENT OF ISSUES PRESENTED

I.   Should Plaintiff's motion for preliminary injunction be denied, where Plaintiff has a low likelihood of success on the merits because Plaintiff has been afforded constitutional procedural due process in its business license revocation proceedings, the City's revocation decision is supported by a rational basis, Plaintiff's mandamus claim is precluded by alternative remedies, and Plaintiff's claim of a "violation" of 42 U.S.C. § 1983 is not an independent substantive cause of action?

  Defendant answers:  Yes
  Plaintiff answers:  No

II.  Should Plaintiff's motion for preliminary injunction be denied for failure to present an irreparable harm, where Plaintiff had the opportunity for an appeal of the City Council's revocation decision that it did not take, and claims economic damages?

  Defendant answers:  Yes
  Plaintiff answers:  No

III. Should Plaintiff's motion for preliminary injunction be denied where the balancing of harms and public interest weigh in favor of denying the injunction?

  Defendant answers:  Yes
  Plaintiff answers:  No

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF REQUESTED</u>

*Adair v. Charter County of Wayne,* 452 F.3d 482 (6th Cir. 2006)

*Golf Village North, LLC v. City of Powell, Ohio,* 42 F.4th 593 (6th Cir. 2022)

*Kerr v. U.S. Dist. Court of Northern Dist. of California,* 426 U.S. 394 (1976)

*Kister v. Milliken,* 432 F.Supp. 1001 (E.D. Mich. 1977)

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000)

*Mathews v. Eldridge,* 424 U.S. (1976)

*Paeth v. Wroth Tp.,* 483 Fed. Appx. 956 (6th Cir. 2012)

*Shoemaker v. City of Howell,* 795 F.3d 553 (6th Cir. 2015)

# INTRODUCTION

Plaintiff asks this Court to transform its temporary restraining order in this case into a preliminary injunction, enjoining the City from effectuating its determination to revoke the business license for Plaintiff's day facility for homeless individuals. The revocation decision was the result of a multi-year series of events revealing the facility to be a detriment to the public, health, safety and welfare.

Plaintiff presents the story of its facility as one that is a beacon of hope to homeless and impoverished individuals and characterizes concerns about the property as irrational and/or the product of unaffiliated off-site citizens who have something against homeless people. What Plaintiff leaves out is the two-year-long history of over 60 police calls for service to the facility – many initiated by Plaintiff's own representatives – including calls relating to persons possessing knives on the property, fights, an actual stabbing, and repeated calls for the police to assist Plaintiff in dealing with people who did not want to leave the facility. Nor does it acknowledge that, when Plaintiff's doors close for the day and its employees go home, the clients it sends out into the streets challenge the welfare of the public (and themselves) by calling the police and/or fire department for rides to the hospital, getting run over, sleeping in the driveway of the facility, creating issues for local businesses, and generating blight in the form of various tent encampments in the City. Far from being attenuated or isolated incidents, the history of Plaintiff's facility

demonstrates that the City had a rational basis in pursuing revocation of its business license based on it being a detriment to public health, safety and welfare, which in turn defeats Plaintiff's substantive due process claim.

Plaintiff claims that the City did not follow proper procedures in pursuing the revocation, but the evidence shows that the City provided constitutional due process. The City provided pre-revocation notice of its intent to revoke the license, provided an approximately four-hour-long appeal hearing before the Mayor and City Council that ultimately had no limitations on Plaintiff's ability to present witnesses in its favor, and stayed the effectiveness of the revocation pending the appeal process. Though Plaintiff had the opportunity to seek further review in the state circuit court, Plaintiff has missed the deadline for availing itself of that opportunity. Plaintiff's Complaint nevertheless asks this Court to issue a writ of mandamus against the City ordering it to re-do the revocation process, but it fails to show that the City violated any duty pertaining to the procedures, and the claim ultimately fails because Plaintiff had an adequate alternative remedy in the form of the circuit court appeal that it declined to file.

As the record shows that procedural due process was followed, that the City had a rational basis for its revocation decision, and mandamus is not available, Plaintiff has little to no likelihood of success on the merits of the Complaint. Moreover, it had an adequate remedy in the appeal it failed to pursue, and otherwise

2

has pled claims for monetary damages, which defeats Plaintiff's claim of an irreparable harm that would need to be remedied through injunctive relief. And, importantly, the balance of harm and public interest advise that the continuation of this business, together with its on-site disorder and secondary effects, risks harm not only to the community at large, but to the facility's clients. As the factors of the preliminary injunction analysis all point against granting Plaintiff an injunction, its motion should be denied.

## STATEMENT OF FACTS

### I.      The Subject Property and Facility

Plaintiff, ChristNet, operates a facility that holds itself out as providing day services to homeless persons, located at 25725 Eureka Road, in Taylor. (Complaint [Compl.], ECF No. 1, PageID.2.) Its building is located just east of Beech Daly Road, within a prominent business corridor of the City. The facility operates at the location under a lease with the Wayne-Metropolitan Community Action Agency ("Wayne Metro"), which owns the property. (Compl. ¶¶ 15, 18.)

The City issued a commercial certificate of occupancy for the building on August 9, 2022. (C of O, Compl. Ex. D, ECF No.1-1, PageID.17.) ChristNet ultimately obtained a business license on September 24, 2023 to operate a "non profit employment services and related resource" center at the location. (Business License, Compl. Ex. E, ECF No. 1-1, PageID.19.)

## II.    Police Runs to Plaintiff's Facility

Since the time that the C of O was granted, the property has been a constant source of calls for police service. A summary of police calls to the location is attached as Exhibit 1, which shows that police have been called to the site no fewer than 60 times. Police reports related to these calls are attached as Exhibit 2. As evidenced by those reports, contrary to Plaintiff's representations of issues at the site being external or mere grievances of third parties, in many cases the calls have been initiated by representatives of Plaintiff itself.[1] Common reasons for the calls include individuals refusing to leave the facility or property, individuals sleeping on the property, persons causing confrontations with other visitors to the location or third parties, and threats to passers-by or Plaintiff's representatives.

A concerning number of these calls have involved violent or dangerous situations. For example, on July 11, 2023, police were called to the site "on the report of an out-of-control male throwing objects at vehicles and driving by." (Ex. 2, 7/11/23 Report.) On August 31, 2023, police were called on report of an individual who was threating to blow up the building. (Ex. 2, 8/31/23 Report.) That man returned, as did police, on September 4, 2023. (Ex. 2, 9/4/23 Report.)

---

[1] The fact that police frequently were called Plaintiff's facility, at the request of Plaintiff's own representatives, causes Plaintiff's narrative within its brief that it was unaware of the problems of their facility to ring hollow.

4

On September 14, 2023, police were again called on a report that a man at the facility was yelling at staff and refusing to leave. (Ex. 2, 9/14/23 Report.) Upon being confronted, he refused to leave and demanded that officers take him to jail. *Id.*

On November 9, 2023, police arrived on a report that an individual told a therapist at Plaintiff's facility that she planned to kill herself, and had knives at home. (Ex. 2, 11/9/23 Report.) Two days later, they were called to address a report of a man laying down in the driveway to the complex. (Ex. 2, 11/11/23 Report.) The next day, police responded to a report that a person at the facility stole her phone. (Ex. 2, 11/20/23 Report.)

Issues persisted and escalated into 2024. On January 16, 2024, police reported to the scene on report of another suicidal individual who was suspected to have a weapon. (Ex. 2, 1/16/24 Report.) On March 8, 2024, police were called on report of another suicidal individual with a knife on the scene. (Ex. 2, 3/8/24 Report.) On March 12, 2024, police responded on the report of a caller who felt threatened by an individual at Plaintiff's property. That individual advised that he had come to the location to "get housed," but it was closed, and he wanted to go to the hospital, upon which police transported him to the hospital. (Ex. 2, 3/12/24 Report.)

On March 25, 2024, police responded again, this time to a report of a physical altercation between two males outside the location, in which one man attempted to

choke the other, and the other kicked the man threating to choke him in the face. (Ex. 2, 3/25/24 Report.)

Then, on April 10, 2024, police arrived on the scene to find a victim laying on the ground south of the main entrance to Plaintiff's center, who had been assaulted and was bleeding profusely. (Ex. 2, 4/19/24 Report.) The suspect was fleeing the property and the responding officer had un-holster his gun before the suspect complied with his orders. *Id.* Further investigation revealed that the altercation started in the coffee area of Plaintiff's facility, where the suspect pulled out a knife and stabbed the victim found at the entrance, along with others. *Id.*

### III.   External Effects of Plaintiff's Facility

The effects of Plaintiff's facility are not limited to the site itself, nor to demands made of the police department. For example, the fire department has received nightly calls to be taken by the EMS to the hospital from an individual who stays overnight at the bus stop outside the nearby Meijer location because he is unable to stay at Plaintiff's facility after hours. (Ex. 3, 3/8/23 email.)

The City has also received multiple complaints from nearby business owners regarding individuals who rummage through their trash, sleep in alleys, and set up tents. (Ex. 4, Representative complaints.) Indeed, photos of nearby areas show various temporary encampments with tents and trash. (Ex. 5, Photos.) While Plaintiff

attempts to distance itself from concerns in the greater community, it is noteworthy that ChristNet has actively solicited donations of tents. (Ex. 6, Facebook Post.)

## IV.    The Business License Revocation Decision

Faced with the ongoing strain on the City's services, the repeated complaints of the community, the risks to the public, and Plaintiff's failure to get control of the situation at its facility, the City took action. On April 8, 2024, the City issued a letter to Plaintiff, signed by the Mayor and City Clerk, advising that the City would be revoking Plaintiff's business license, effective May 13, 2024. (Ex. 7, 4-8-24 Letter.) The letter referenced the host of issues surveyed, *supra,* and asserted that Plaintiff's operation "has been a detriment to the health, safety and welfare of the residents and businesses that live and operate in the surrounding area." *Id.* This rationale is expressly authorized under the City's business licensing ordinance as a cause for revocation. (Ex. 9, Ord. § 10-23(3).) The letter also advised Plaintiff of its right to appeal the revocation decision to the City Council. (Ex. 7.)

Plaintiff did, in fact, appeal the revocation determination to the City Council. The hearing took place at the City Council's May 21, 2024 meeting. (Ex. 8, 5-21-24 Council Minutes.) Pursuant to the City's business license ordinance, Ord. 10-25(b), the revocation was stayed pending the appeal. (Ex. 9, Ord. Ch 10.) The hearing was attended by not only the City Council, but also the Mayor. *Id.* The hearing lasted approximately four hours, and featured comments from multiple representatives of

Plaintiff, including its attorney, as well as members of the public who both supported and opposed Plaintiff's facility. Upon the conclusion of the hearing, the Council voted, 4-2, to affirm the revocation determination. *Id.* Minutes of the May 21, 2024 Council meeting were approved at the Council's June 4, 2024 meeting. (Ex. 10, 6-4-24 Minutes.) In light of the Council's determination, the City issued a letter dated June 3, 2024, providing that Plaintiff's business license would be considered revoked as of June 16, 2024. (Ex. 11, 6-3-24 Letter.) As further explained, *infra,* despite having the opportunity to do so, Plaintiff did not appeal the City Council's decision to the Wayne County Circuit Court, and its time for doing so has expired.

In the time since the City Council's decision, the trend of health and safety issues emanating from Plaintiff's facility has continued. As recently as June 20, 2024, the Fire Department responded to a call for service relating to an individual who had been leaving Plaintiff's facility and was struck by a car at Telegraph and Eureka. (Ex. 12, 6-20-24 e-mail.) The City was also called upon on June 19, 2024 to address a man who had defecated at a nearby bus stop.

## V. The Complaint and Proceedings to Date

Plaintiff filed its Complaint in this matter on June 14, 2024. (ECF No. 1, PageID.1), together with the instant motion for temporary restraining order and motion for preliminary injunction. (ECF No. 2, PageID.40.) This Court entered a temporary restraining order on June 16, 2024, and set the instant motion for briefing

and a hearing. (ECF No. 4, PageID.73.) In light of the temporary restraining order, Plaintiff's operation has continued. Indeed, to date, at no point since the initial April 8, 2024 letter from the City has the revocation determination taken effect.

The Complaint asserts four causes of action: procedural due process (Count I), substantive due process (Count II), a request for writ of mandamus (Count III), and an alleged violation of 42 U.S.C. § 1983 (Count IV). The Complaint seeks a new revocation hearing, and damages. Plaintiff now seeks a preliminary injunction, which the City opposes on all elements of the injunction analysis.

## <u>STANDARD OF REVIEW</u>

It is well-established that "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council,* 55 U.S. 7, 24 (2008). Thus, "[t]he party seeking a preliminary injunction bears the burden of justifying such relief." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). When deciding whether to issue a preliminary injunction, the Court considers the following factors: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

## ARGUMENT

**I.    Plaintiff does not have a strong likelihood of success on the merits.**

### A. Plaintiff has been afforded procedural due process that comports with constitutional requirements.

Procedural due process generally is understood as requiring fairness in procedures when depriving somebody of life, liberty or property. See, e.g., *EJS Properties,* 698 F.3d at 855. To show a violation of procedural due process, Plaintiff has to show that the Township did not afford it "adequate procedural rights prior to depriving [it] of the property interest." *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir.2006)." *Id.* "[A]t its essence, due process can be summarized as 'the requirement that a person . . . be given notice of the case against him and [an] opportunity to be heard." *Shoemaker v. City of Howell,* 795 F.3d 553, 559 (6th Cir. 2015), citing *Mathews v. Eldridge,* 424 U.S. 319, 348-49 (1976).

In reviewing whether procedural due process has been afforded, pre- and post-deprivation procedures should be "considered together as a single package." *Shoemaker,* at 559. Notice is sufficient where the property owner "was clearly aware that the City considered him to be in violation of the Ordinance." *Id.,* at 560.

While the Complaint and the instant motion focuses on what procedures were required under City Ordinance pertaining to the business license revocation process, these procedures are not dispositive for a federal procedural due process claim, nor

10

for the claim under the Michigan Constitution.[2] Even where a municipality does not "fully comply with its own Ordinance, such a failure 'does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution.'" *Shoemaker,* 795 F.3d at 560, citing *Depiero v. City of Macedonia,* 180 F.3d 770, 788 (6th Cir. 1999). Indeed, "what process is due under the Constitution is not equivalent to the procedures outlined by statutes or ordinances, and so a violation of them does not automatically point to a due process violation." *Paeth v. Wroth Tp,* 483 Fed.Appx. 956, 962 (6th Cir. 2012), citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541-42 (1985), and *DePiero v.* 180 F.3d at 788 (6th Cir. 1999). Instead, assuming that there is a constitutionally protected property interest at all, the federal constitutional framework for a procedural due process claim assesses:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguard; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[2] Plaintiffs' constitutional claims are raised under both U.S. and Michigan Constitutions. As the Michigan Constitution's provisions are construed coextensively with their federal counterparts, they are appropriately considered together. *Shepherd Montessori Center Milan v. Ann Arbor Chtr. Twp.,* 783 N.W.2d 695, 698 (Mich. 2010); *Cummins v. Robinson Twp.,* 770 N.W.2d 421, 438 (Mich. 2009).

*Paeth,* 483 Fed.Appx at 962, quoting *Mathews,* 424 U.S. at 335.

Here, Plaintiff's primary allegation of a procedural due process violation is that the business license allegedly was revoked without a hearing by the Mayor through the April 8, 2024 letter. Plaintiff construes this as deviating from Ord. § 10-23, which provides that a business license may be revoked and/or suspended by the Mayor or City Clerk at any time after a hearing. However, while the April 8, 2024 letter announced that the business license would be revoked, the letter made it clear that the revocation was not immediately effective, but instead would be effective on May 13, 2024, and that Plaintiff had a right to appeal. Plaintiff did appeal, and pursuant to Ord. § 10-25(b), the effective date of the revocation was stayed pending Plaintiff's exhaustion of remedies. The City Council hearing itself was before not only the City Council, but also the Mayor and City Clerk. Accordingly, Plaintiff was provided notice and an opportunity to be heard that essentially took on a hybrid form of pre-deprivation and post-deprivation due process, as it was *before* the revocation took effect, yet *after* the initial revocation determination had been made.

The hearing was nearly four hours long, and included comments from a host of Plaintiff's representatives, including its attorney. While Plaintiff takes issue with the fact that its representatives were initially provided only three minutes each to provide comments, Plaintiff concedes that their representatives were ultimately provided additional time as the hearing continued.

12

Though Plaintiff expresses that it would have liked to have seen a different format for the hearing, it presents no authority for the proposition that a particular form of evidence gathering, cross-examination, or the like is required either under the Township's ordinance, or the law governing procedural due process claims, because there are no such rigid requirements. Even Plaintiff's citation to the non-binding out-of-circuit case, *West v. Grand Cnty,* 967 F.2d 362 (10th Cir. 1992) acknowledges that cross-examination is "not necessary in every case" for procedural due process to be satisfied. *Id.,* at 369. Here, the hearing lasted as long as there were people to speak. Plaintiff had no limitations on witnesses it could present, or what evidence it could present to the City Council to challenge the revocation. Moreover, as acknowledged in the Complaint and instant motion, Plaintiff was also fully aware of the information that the City was relying upon, as it had sufficient time between the initial letter and the appeal hearing to obtain materials through a Freedom of Information Act request. The City also made sure that all documents and evidence available to the City Council for the hearing was also provided to Plaintiff prior to the hearing. Thus, in considering the *Mathews* factors, Plaintiff has a low likelihood of succeeding on its claim that the procedures utilized risked an erroneous deprivation, or that additional procedures would have probable value in providing an additional safeguard. To the extent that Plaintiff believes that there could have been some additional value in a second hearing before the Mayor, individually, it is

13

unclear what additional value that would have had beyond the full City Council hearing that the Mayor attended, at which Plaintiff effectively had the opportunity to persuade the Mayor to reconsider his recommendation to the Council, and/or to persuade the Council to reject the Mayor's decision, and indeed persuaded two dissenting Council votes. Where such ample opportunity has been provided, additional procedures such as cross-examination of witnesses by plaintiff's counsel are not required. *Frumkin v. Board of Trustees, Kent State University,* 626 F.2d 19, 21 (6th Cir. 1980).

Plaintiff's citation to *Johnson v. Morales,* 946 F.3d 911 (6th Cir. 2020) is also not persuasive for purposes of this case. That case involved an immediate suspension of a restaurant's license by the City of Saginaw based on a shooting at the restaurant that had occurred at the restaurant several days earlier by persons who had driven up to the restaurant in a vehicle. *Id.,* at 916. The plaintiff was then provided a hearing three days later, after which the City took about two months to render a decision upholding the suspension. *Id.* While acknowledging that "failure to provide a hearing prior to a license or permit revocation does not per se violate due process," the Court determined that a pre-deprivation hearing was necessary in that case, seemingly persuaded by the isolated nature of the occurrence, the fact that the suspect involved in the shooting had not been identified or arrested, and due to the suddenness of the complete suspension of the business license. *Id.,* at 924-925. Such

14

circumstances are not present here, as the City did not immediately revoke the license, the initial notice of the decision was provided in the wake of two years worth of history of problems at the property, and Plaintiff had ample time to assemble evidence and prepare for the appeal hearing the following month, all the while the revocation was stayed. Notably, as explained in the next section pertaining to the mandamus claim, Plaintiff had an additional opportunity for post-deprivation review through a circuit court appeal of the City Council's decision afforded by the Michigan Constitution, but Plaintiff declined to pursue this avenue of relief.

Comprehensively considering the City's pre- and post-deprivation procedures, as is required for the procedural due process claim, reveals that Plaintiff has a low likelihood of success on succeeding on its procedural due process claim, and its motion for preliminary injunction should be denied.

### B. This Court lacks subject matter jurisdiction over a portion of Plaintiff's request for mandamus relief, and the balance of the mandamus claim fails.

Through Count II, Plaintiff asks this Court to issue a writ of mandamus against the City compelling the City to "hold a hearing before the mayor, in the presence of a court reporter, with time for witness testimony and presentation from counsel;" hold a post-deprivation appeal hearing if the Mayor again decides that revocation of the business license is appropriate; and, retain jurisdiction to review the City's actions if Plaintiff's business license is revoked again. (ECF No. 1, PageID.10-11.)

Plaintiff's claim will fail due to the availability of adequate alternative remedies that Plaintiff did not pursue, due to Plaintiff's lack of standing for a portion of the relief requested, and because the relief is not warranted on the merits.

### 1. Plaintiff lacks standing to pursue parts "b" and "c" of the mandamus relief requested in Count II.

As an initial matter, Plaintiff lacks standing to seek the relief requested in parts b and c of their request for relief in Count II, thus depriving this Court of subject matter jurisdiction over that portion of the claim. These requests do nothing but seek relief related to a speculative harm that will only arise *if* this Court grants Plaintiff's request for mandamus to hold a hearing before the Mayor, and *if* the Mayor were to again determine that revocation is necessary, and, with respect to part c, *if* the Council were to again affirm license revocation.

Article III of the U.S. Constitution limits federal courts to taking jurisdiction over actual cases and controversies. *Arnett v. Myers,* 281 F.3d 552, 562 (6th Cir 2002). A component of this is that Plaintiff must have standing. *Allen v. Wright,* 468 U.S. 737, 750 (1984). Plaintiff must show: 1) that she has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" 2) a causal link "between the injury and the conduct complained of;" and 3) it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992).

16

A plaintiff cannot achieve standing by merely asserting "a 'highly speculative fear' that a law may harm them at some future date." *Vonderhaar v. Village of Evendale, Ohio,* 906 F.3d 397, 401 (6th Cir. 2018). But, here, that is exactly what parts b and c of the request for relief in Count III requests, as it seeks prospective relief that would be relevant only if a series of future contingencies occurs. This is much like the claim in *Vonderhaar,* where a claim of standing to challenge a rental property inspection ordinance was rejected based on the plaintiffs' fear that they would be victims of a warrantless inspection of their properties in the future. Here, Plaintiff pleads nothing but fear that, if a new revocation hearing is ordered by this Court, the Mayor and Council will again revoke its license. As not even the contingency of a new revocation hearing has yet occurred,  requests for relief b and c of Count II rest purely on speculative results of that potential future hearing (the potential existence of which is itself highly speculative). Accordingly, Plaintiff lacks standing to seek that relief, and therefore has no likelihood of success in obtaining that relief.

## 2. Plaintiff cannot satisfy the requirements to obtain a writ of mandamus to compel a new license revocation hearing.

Part "a" of the request for relief in Count II asks this Court to compel the City to hold a new license revocation hearing before the Mayor, and specifically demands that it be in the presence of a court reporter, with time for witness testimony and presentation for counsel.

17

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situation." *Kerr v. U.S. Dist. Court of Northern Dist. of California,* 426 U.S. 394, 402 (1976). While the federal courts do "not have the power to compel state officials to enforce state rights, they may 'issue a writ of mandamus ordering a state official to enforce rights protected by federal law." *Dascola v. City of Ann Arbor,* 22 F.Supp.3d 736, 746 (E.D. Mich 2014). However, to succeed, Plaintiff must show that it "has no other adequate means to attain the relief [it] desires," and that its "right to issuance of the writ is clear and indisputable." *Id.* Even where mandamus elements are satisfied, the remedy "is in large part a matter of discretion." *Kerr,* 426 U.S. at 394.

Importantly, mandamus "may never be employed as a substitute for appeal." *Will v. U.S.,* 389 U.S. 90, 97 (1967). Thus, where an appeal is available, the appeal is an adequate alternative remedy that defeats the mandamus claim. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36-37 (1980); (*accord, i.e., Smith v. Crime Victims Compensation Bd,* 130 Mich.App. 625, 628, 344 N.W.2d 23 (Mich. Ct. App. 1983), providing the same under Michigan law.) Here, the business license revocation process followed the administrative procedures of Ord. Chapter 10, culminating in a decision of the City Council. The Michigan Constitution provides a direct right to appeal such a decision as follows:

> All final decision, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are

18

judicial or quasi-judicial and **affect private rights or licenses,** shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases where a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

Mich. Const. 1963 Art. VI, §28, emphasis added.

Under the Michigan Rules of Court, an appeal of an administrative decision to the state circuit court must be filed within 21 days from the order or decision being appealed. Mich. R. Court 7.104(A)(1); Mich. R. Court 7.123(B)(1). Here, the City Council's May 21, 2024 decision to affirm the revocation of Plaintiff's business license became appealable as of June 4, 2024 – the date it approved the minutes of that meeting. (Ex. 10.) Accordingly, Plaintiff had until June 25, 2024 to file a claim of appeal to the Wayne County Circuit Court, but it did not. As such, the Council's decision is final, and Plaintiff's mandamus claim (and, the Complaint in general) is an impermissible collateral attack on the Council's decision. *Moore v. Hiram Township,* 988 F.3d 353, 358 (6th Cir. 2021). The nature of the Complaint as a collateral attack on the decision is not excused by Plaintiff's failure to appeal, or by the fact that Plaintiff's federal claims allege that the underlying decision was erroneous. *Id.* For this reason alone, Count II has no likelihood of success, and provides no support for preliminary injunctive relief.

Even if the mandamus claim were to be considered on the merits, it would fail. As explained with respect to the procedural due process claim, Plaintiff *was*

19

afforded a hearing before the Mayor and City Council before a final determination regarding the status of Plaintiff's business license was made by the City Council. While the Mayor issued an initial letter advising that the license would be revoked, that revocation did not take effect prior to the appeal, so the license never was "revoked" without a hearing. Accordingly, the requirements of Ord. Sec. 10-3 were satisfied, and the City is under no duty to re-do the license revocation process.

Even if a new hearing were to be ordered, Plaintiff's request for this Court to utilize a writ of mandamus to require the hearing to be administered in a certain manner (i.e before a court reporter and with certain provisions for the order of testimony) is made without reference to any ordinance section or other authority, and exceeds the scope of what a Court can order through mandamus. Mandamus may only be utilized to order a government to act upon a ministerial duty, but not how to exercise its discretion in performing that duty. *Intermodal Technologies, Inc. v. Mineta,* 313 F.Supp.2d 834, 839 (E.D. Mich 2006). As neither Ord. 10-3 nor the general law of procedural due process prescribes a specific format for the license revocation hearing, the furthest Plaintiff could potentially go in seeking mandamus relief is to seek a Court order requiring a new revocation hearing to be held. However, that brings us back to two key facts that are fatal to the mandamus claim: first, a hearing *was* held (and therefore there is no violation of a duty that needs to be compelled through mandamus); and, second, Plaintiff's request for a rehearing

would appropriately be brought in the context of an administrative appeal, *not* a mandamus claim. Accordingly, the mandamus claim has no likelihood of success on the merits and does not support Plaintiff's request for injunctive relief.

### C. The conduct alleged does not support a substantive due process claim

Plaintiff's substantive due process claim (Count II) also has a low likelihood of success on the merits. Since no fundamental right is alleged in this case, review is under the rational basis test. The conduct must be arbitrary in the constitutional sense; that is, it must "shock the conscience." *Cummins,* 770 N.W.2d at 703, citing *Mettler-Walloon, LLC v. Melrose Twp.,* 281 Mich.App.184, 200-201, 761 N.W.2d 293, 306 (Mich. Ct. App. 2008). A plaintiff must negate every conceivable basis that might support the Township's actions or show that they are based "solely on reasons totally unrelated to the pursuit of the State's goals." *Houdek v Centerville Twp,* 276 Mich.App.568, 583, 741 N.W.2d 587, 597 (Mich Ct. App. 2007). The Sixth Circuit has recently cautioned that there are very few cases in the land use context that meet this standard. *Golf Village North, LLC v. City of Powell, Ohio,* 42 F.4th 593, 601 (6th Cir. 2022.) The conduct must be "so shocking as to shake the foundations of this country." *Id.,* at 602, citing *EJS Properties,* 698 F.3d 845, 862.

Plaintiff premises its argument that there is no rational basis on its interpretation of the City's invocation of public health, safety and welfare as being connected only to actions of persons unaffiliated with Plaintiff's facility, and off the

premises. Plaintiff makes this argument in an effort to shoehorn the circumstances of this case again into *Johnson, supra,* where the Sixth Circuit took issue with Saginaw's suspension and revocation of a business license based on a shooting that took place at the plaintiff's restaurant. However, *Johnson* is distinguishable, and the premise of Plaintiff's argument is mistaken. The City's record – transmitted to Plaintiff prior to the Council appeal hearing – shows that the multi-year history of problems with the facility reveal that a substantial number of those issues have taken place at the facility (including the stabbing), that many of the police runs were generated by staff at Plaintiff's facility asking the police to address individuals who would not leave, and that the problems in the neighborhood have otherwise emanated from the facility (i.e. the callers to the EMS for transport to the hospital, the suspect who was fleeing the scene of the stabbing, the individual who was struck by a car after leaving the facility, and the individual sleeping in the facility's driveway, among others.) This is on top of the secondary effects in the neighborhood of which Plaintiff tries to limit the significance, but which are themselves matters of public health, safety, and welfare.

### D. "Violation of 42 U.S.C. § 1983" is not an independent substantive cause of action.

Count IV is styled as "Violation of 42 U.S.C. §1983." However, 42 U.S.C. § 1983 "is not itself a source of substantive rights." *Adair v. Charter County of Wayne,* 452 F.3d 482, 492 (6th Cir. 2006). It merely "authorizes a person to bring a claim

22

against a person who, acting under color of law, violates one's rights established elsewhere." *Estate of Fluegge v. City of Wayne,* 442 F.Supp.3d 987, 997 (E.D. Mich. 2020). As Count IV does not identify a cause of action relative to any other statute or constitutional provision, Count IV is merely redundant of Counts I and II, and has no likelihood of success on its own. Consequently, Count IV adds nothing to the assessment of Plaintiff's potential to succeed in this matter, and does not provide any support for injunctive relief.

## II. Plaintiff's alleged harm is not irreparable, or otherwise is only irreparable because Plaintiff failed to pursue an administrative appeal.

Plaintiff's claim for injunctive relief should also fail based on the fact that its alleged harm is not irreparable. Plaintiff has pled a claim for economic damages. Where "any damages would be economic in nature and fully compensable monetarily," there is "no potential for irreparable harm." *Taubman Co. v. Webfeats,* 319 F.3d 770, 778 (6th Cir. 2003).

In addition, as explained, *supra,* Plaintiff had the ability to pursue an appeal of right of the City Council's revocation decision to the state circuit court, but did not do so. The availability of a state court remedy is an adequate one that defeats a request for injunctive relief, even if Plaintiff did not pursue that remedy. *See, e.g., Kister v. Milliken,* 432 F.Supp 1001, 1003-04 (E.D. Mich. 1977); *Aluminum Co. of America v. Department of Treasury of State of Mich.,* 522 F.2d 1120, 1123-1128 (6th Cir. 1975).

**III.   Issuance of a preliminary injunction risks harm to the public, and the public interest advises toward denying the preliminary injunction.**

Denial of the preliminary injunction is also warranted by the balancing of harms, and the risk to the public interest, which are closely related factors. While Plaintiff choses to argue that the absence of an injunction would harm its humanitarian mission, and that its clients will be harmed if its facility is not available during the daytime, the record of the facility shows the serious risk of harm of keeping the facility open, not merely to the public at large, but to the clients themselves. The police reports show a history of knife-wielding individuals and fights at the property, and a host of issues that occur when the facility shuts its doors at the end of the day and leaves the clients to fend for themselves in the midst of Taylor's commercial corridor, resulting in situations including but not limited to: individuals sleeping in the driveway to the facility, being run over by a car, and making demands of the police and fire department to take them to the hospital. The dozens of calls for service for police and fire services relating to this facility are a strain on the City's resources. The additional secondary effects, including the blight of tent encampments, trash, and disturbances at nearby businesses only add to the how the public interest in preserving the health, safety and welfare of the City's residents and visitors – including Plaintiff's clients themselves – will be harmed by providing ongoing preliminary injunctive relief.

## CONCLUSION

For these reasons, Defendant, CITY OF TAYLOR, respectfully requests that this Honorable Court DENY Plaintiff's Motion for Preliminary Injunction, and grant any other relief deemed appropriate.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH
  & AMTSBUECHLER PC

  /s/ Matthew J. Zalewski
Matthew J. Zalewski (P72207)
Attorneys for Defendant
27555 Executive Drive, Suite 250
Farmington Hills, MI  48331-3550
(248) 489-4100
mzalewski@rsjalaw.com

Dated:  July 10, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Matthew J. Zalewski