UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTNET INC., a
Michigan non-profit corporation,

    Plaintiff,

v.

CITY OF TAYLOR,

    Defendant.
_____/

Case No. 24-11561
Hon. Denise Page Hood

# ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 2]

## I.  INTRODUCTION

Before the Court is Plaintiff, ChristNet Inc.'s, Motion for Preliminary Injunction. [ECF No. 2]. On June 16, 2024, this Court granted Plaintiff's Emergency Motion for Temporary Restraining Order ("TRO") and required Defendant, City of Taylor, to respond pursuant to the schedule set forth in the Order. [ECF No. 4]. On June 21, the parties filed a Stipulated Order for Extension of Briefing Dates, whereby, Defendant agreed that the TRO would remain in effect until the date set for hearing or until further Order of this Court. [ECF No. 7]. The Motion for Preliminary Injunction is fully briefed and oral argument was held on July 24, 2024. See [ECF Nos. 10 and 12]. For the reasons stated herein, Plaintiff's motion for preliminary injunction is granted.

## II.  BACKGROUND

Plaintiff is a non-profit corporation which provides services to homeless and in-need individuals in Wayne County. [ECF No. 1, PageID.1-2]. On August 9, 2022, Plaintiff received a certificate of occupancy from Defendant, approving its commercial occupancy of the property located at 25275 Eureka Road. *Id*. On September 24, 2023, Plaintiff received a business license from the Defendant to operate a facility providing nonprofit employment services and related resources. *Id*. Plaintiff provides meals, showers and hygiene support, laundry facilities, off-site overnight housing, identification assistance, referral services, employment, and other services to its guests. *Id*. Some of Plaintiff's work is accomplished through its partnership with Wayne-Metropolitan Community Action Agency ("Wayne-Metro"). *Id*. at PageID.3. While Plaintiff began occupying its current building in September of 2022, it purchased the property in 2013 and has been performing renovations since that time. *Id*. As the cost of final renovations increased, Plaintiff and Wayne-Metro entered into an agreement whereby Plaintiff deeded the property to Wayne-Metro, which then funded the project to completion in exchange for a lease back to Plaintiff for $1/year for ten years, renewable for an additional ten years. *Id*.

On April 8, 2024, Plaintiff received a notice signed by the Mayor of the City of Taylor and the City Clerk revoking its business license, effective May 13, 2024. *Id*. at PageID.5. Defendant asserts that Plaintiff's operations are a detriment to the

health, safety and welfare of the residents and businesses that live and operate in the surrounding area as the basis for revocation. *Id*. Plaintiff appealed the decision, and an appeal hearing was held May 21, 2024. *Id*. In preparation for the hearing, Plaintiff obtained documents through a Freedom of Information Act request. *Id*. Plaintiff alleges that the FOIA documents revealed that Defendant and Wayne-Metro had been engaged in a campaign for over a year to orchestrate a breach of the lease for Plaintiff's occupancy, so that Wayne-Metro could take possession of the property and conduct its own operations from the building. *Id*. at PageID.6. The campaign allegedly included complaints about Plaintiff's business operations from Wayne-Metro which were never investigated and images of blighted areas around the city being associated with Plaintiff. *Id*.

After the appeal hearing, the City Council upheld the decision to revoke Plaintiff's business license and Plaintiff received a letter dated June 3, 2024, stating that its business license would officially be revoked Sunday, June 16, 2024. *Id*. at PageID.7. Plaintiff alleges that the Defendant denied it due process by failing to provide Plaintiff a hearing in front of the Mayor as required by City Code of Ordinance § 10-23 before revoking its business license. [ECF No. 2, PageID.51]. Plaintiff alleges four counts: (1) Procedural Due Process Violation, (2) Writ of Mandamus (3) Substantive Due Process Violation, (4) Violation of 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff seeks a preliminary injunction preventing Defendant

from revoking its business license pending the outcome of this matter. [ECF No. 2].

Defendant argues that Plaintiff is not entitled to a preliminary injunction because it provided Plaintiff constitutional due process by providing "pre-revocation notice of its intent to revoke the license and an appeal hearing before the Mayor and City Council, Plaintiff lacks standing to request a writ of mandamus, and Defendant had a rational basis for its decision to revoke Plaintiff's business license. [ECF No. 10, PageID.109]. Defendant further argues that "Plaintiff has little to no likelihood of success on the merits of the Complaint. Moreover, it had an adequate remedy in the appeal it failed to pursue, and otherwise has pled claims for monetary damages which defeats Plaintiff's claim of an irreparable harm that would need to be remedied through injunctive relief." *Id*. at PageID.109-10.

### III. ANALYSIS

"Issuance of a preliminary injunction is an extraordinary remedy." *JGMM realty, L.L.C. v. LNR Partners, L.L.C.*, No. 16-10633, 2016 WL 1719925, *1 (E.D. Mich. April 28, 2016). "A plaintiff seeking a preliminary injunction must establish (1) that [s]he has a strong likelihood to succeed on the merits; (2) that [s]he is likely to suffer irreparable harm without the injunction; (3) that the injunction would not cause substantial harm to others; and (4) that an injunction is in the

public interest." *Id.* quoting *Livonia Property Holdings v. 12840-12976 Farmington Rd. Holdings*, 717 F. Supp. 2d 724, 731 (E.D. Mich. 2010). "Although the factors are to be balanced, a finding that there is no likelihood of irreparable harm, *Winter*, 129 S.Ct. at 375, or no likelihood of success on the merits, *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir.2000), is usually fatal." *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1064 (E.D. Mich. 2011).

### A. Likelihood of Success

#### 1. Procedural Due Process

The Fourteenth Amendment protects citizens from "any law which shall…deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The United States Constitution does not create or define property rights, but it does protect property rights as defined by state law. *Big Momma's Soul Kitchen v. Louisville-Jefferson Cnty. Metro Gov't*, 551 F. Supp. 2d 620, 624 (W.D. Ky. 2008). "To succeed on that claim, the plaintiffs must first show that they had a property interest protected under the Fourteenth Amendment and that they were deprived of that interest, and then show that the procedures provided by the defendant were not sufficient to protect their rights to due process." *Id*.

Plaintiff argues that it was denied procedural due process because Defendant failed to provide any hearing before the mayor, as required by City of Taylor Code

5

of Ordinance Section 10-23 and 10-25, before it revoked Plaintiff's business license. Section 10-23 states:

> Grounds for refusal to issue, suspension and revocation of license.
>
> Licenses requested pursuant to this chapter may be refused by the city clerk and licenses that have been issued may be revoked and/or suspended by the mayor or city clerk at any time after a hearing before the mayor for any of the following causes:
>
> (1) Fraud, misrepresentation or any false statement:
>   a. Contained in the application for license;
>   b. Made in the operation of a business;
> (2) Any violation of this chapter and/or any violation of any other ordinances and regulations of the city and/or the statutes of the state;
> (3) Conducting a business in an unlawful manner or in such a manner as to constitute a breach of the peace or to constitute a menace to the health, morals, safety or welfare of the public;
> (4) The failure or inability of an applicant to meet and satisfy the requirements and provisions of this chapter.

ECF No.10-10, PageID.321-22. Section 10-25(a) entitles any person whose license is revoked or suspended, or renewal thereof has been refused to "a hearing before the city council, provided a written request therefor is filed with the city clerk within ten days following the delivery of mailing of the notice of revocation or suspension[.]" *Id*. at PageID.322. Subsection (b) states "[a]ny revocation, suspension or refusal to renew a license shall not become final until the licensee has exhausted the remedies under the provisions of this chapter." *Id*.

Plaintiff was notified of Defendant's intention to revoke its business license on April 8, 2024. ECF No. 1-4, PageID.32. The notice explained that the

6

revocation would not be effective until May 13, 2024, and that Plaintiff had a right to appeal the revocation decision, which it did. *Id.*, see also ECF No. 1-5, PageID.35. Plaintiff does not deny that an appeal hearing was scheduled and held on May 21, 2024. ECF No. 1, PageID.5-6. Plaintiff also concedes that the mayor was present at the hearing. Plaintiff argues that the hearing was not meaningful, and therefore, violated its right due process. see *Id.* ("On May 21, 2024, at the time set for the City Council appeal hearing of the decision to revoke ChristNet's business license, Defendant, by and through the City Council and Mayor Woolley, only provided ChristNet officers and its legal counsel with three minutes of allotted time per person to address the appeal."). see also, [ECF No. 2, PageID.51].

Defendant argues that it "held a four-hour-long appeal hearing before the Mayor and City Council that ultimately had no limitations on Plaintiff's ability to bring witnesses in its favor and stayed the effectiveness of the revocation pending the appeal process." [ECF No. 10, PageID.109]. On June 3, 2024, Plaintiff was notified that the decision to revoke its business license was affirmed by the City Counsel and revocation would be effective at close of business on June 16, 2024. [ECF No. 1, PageID.7; ECF No. 1012, PageID.332]. At no time prior to the date of this Order has Plaintiff's business license been effectively revoked by Defendant.

7

Defendant attached the City Council meeting minutes from the appeal hearing. [ECF No. 10-9]. The meeting minutes reveal that Mayor Woolley and Clerk Cindy Bower were both present for the hearing. [ECF No. 10-9, PageID.307]. The meeting minutes further reveal that the floor for public comment related to the revocation of Plaintiff's business license was opened. *Id*. at PageID.311]. It is unclear at what time discussion began; however, a brief recess was taken at 9:08 p.m. *Id*. at PageID.312.[1] Sometime following the twelve-minute recess, the City Council voted to close discussion on the matter and voted to affirm the revocation of Plaintiff's business license. *Id*.

Plaintiff argues that procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood. [ECF No. 2, PageID.51]. It is clear from the correspondence from Defendant that the decision to revoke Plaintiff's business license was made by the Mayor and City Clerk, both of whom were present at the appeal hearing. Further, Plaintiff had the opportunity to present information in support of it keeping an active business license. The ultimate decision on revocation was in the hands of the City Council, a separate body. The letters between Plaintiff and Defendant show that Defendant

---

[1] At oral argument, Defendant argued that there is a video of the appeal hearing on the City of Taylor website, which has yet to be transcribed. Defendant further argued that the video supports its contention that Plaintiff was provided at least three and a half hours to advocate in opposition to revocation and had several supporters speak on its behalf. No such video has been provided to the Court and therefore it is not a part of the Court's record.

8

has merely expressed an intention to revoke Plaintiff's business license, but no revocation has occurred in light of the appeal hearing, the temporary restraining order issued by this Court, and the parties' stipulated order where Defendant agreed to not move forward with revocation until further order of this Court. [ECF No. 7]. Given these facts, the Court finds that Defendant acted in accordance with its ordinance by providing Plaintiff with a hearing before the mayor and City clerk prior to revocation of Plaintiff's business license. Plaintiff is not likely to succeed on the merits of its procedural due process claim.

### 2. Substantive Due Process

"Substantive due process is '[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). Substantive due process "protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Id.* "Conduct shocks the conscience if it violates the 'decencies of civilized conduct." *Id.* at 590 quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks removed).

It is not disputed that Plaintiff has a constitutionally protected interest in maintaining its business license. Therefore, the Court must consider whether Defendant deprived it of that interest through arbitrary and capricious actions.

Plaintiff relies on *Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020) in arguing that Defendant's decision to revoke its business license lacks a rational basis, in violation of Plaintiff's substantive due process rights. [ECF No. 2, PageID.52]. There, the Sixth Circuit held that the City of Saginaw violated Johnson's substantive due process rights when it immediately suspended her business license following a shooting that took place at her establishment. *Morales*, 946 F.3d 939. The City's stated reason for suspending Johnson's business license was "(1) it was Johnson's business that was causing or 'generat[ing]' the violence, and (2) she failed to take adequate measures to prevent that violence." *Id*. at 938. Further, defendants contended that the suspension was rational "to protect the health and safety of the Plaintiff and the citizens of Saginaw from violent activity that was taking place *in connection with* Plaintiff's business." *Id*. The district court held that "[b]ecause gang-violence can be systemic and often centers around the same geographic areas, the City's decision to eliminate one potential location for repeated violence was rational." *Id*. However, the Sixth Circuit rejected this "eliminating one potential location" rationale because it "faults the restaurant's

10

mere existence, and therefore could apply to any business operating in the City." *Id*.

Defendant argues that *Johnson* is distinguishable because, here, Defendant's record shows a multi-year history of issues with the facility, which have taken place at the facility, including a stabbing, many police runs, and problems in the surrounding area that emanated from the facility. [ECF No. 10, PageID.129]. As noted by Plaintiff's brief, it appears that Defendant revoked Plaintiff's business license due to the presence and actions of the homeless population in the City of Taylor. [ECF No. 2, PageID.54]. Nevertheless, by revoking Plaintiff's business license, Defendant is likely to face exponentially more issues because Plaintiff's patrons will no longer have a place to go or food to eat during all hours of the day and night. *Id*. Shutting down the facility will likely lead to more encampments and people rummaging for food. While Defendant argues that the "rationale is expressly authorized under the City's business licensing ordinance as a cause for revocation[,]" it cannot be said that such a rationale is rational in every instance. [ECF No. 10, PageID.114].

Defendant has not shown how revocation of Plaintiff's business license will help the problems it claims Plaintiff's facility causes. Defendant also fails to provide any solution in the absence of Plaintiff's facility. By revoking Plaintiff's business license, Defendant will effectively cut off the only place that the patrons

11

have to find shelter and food. Such action is enough to shock the conscience. Therefore, Plaintiff is likely to succeed on its claim of substantive due process violation.

### 3. 42 U.S.C. § 1983

To state a successful claim under 42 U.S.C. § 1983, Plaintiff "must identify a right secured by the United States Constitution and the deprivation of that wight by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). "Plaintiffs need to demonstrate that (1) the conduct at issue must have been under color of state law, (2) the conduct caused a deprivation of constitutional rights, and (3) the deprivation occurred without due process of law." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006). A § 1983 claim depends on the viability of Plaintiff's constitutional claims. *Est. of Fluegge v. City of Wayne*, 442 F. Supp. 3d 987, 997 (E.D. Mich. 2020).

Defendant argues that Plaintiff is not entitled to relief pursuant to 42 U.S.C. § 1983 because violation of § 1983 is not an independent substantive cause of action. [ECF No. 10, PageID.129]. Defendant further argues that Plaintiff fails to identify a cause of action relative to any other statute or constitutional provision and is merely redundant of Counts I and II. *Id.* at PageID.130.

Plaintiff does, however, allege that "[t]he City's actions have deprived ChristNet of constitutional rights guaranteed by the Fourteenth Amendment of the

12

U.S. Constitution. [ECF No. 1, PageID.13]. In *Est. of Fluegge v. City of Wayne*, 442 F. Supp. 3d 987, 997 (E.D. Mich. 2020), the court granted defendant's motion to dismiss plaintiffs' complaint where the court found that plaintiffs lacked standing to bring its constitutional claims and therefore had nothing to hinge its § 1983 claim upon. *Est. of Fluegge*, 442 F. Supp. at 997.

Unlike in *Fluegge*, the Court has found that Plaintiff is likely to succeed on its substantive due process claim. Therefore, Plaintiff's §1983 claim would be able to proceed if it could show that (1) the conduct at issue must have been under color of state law, (2) the conduct caused a deprivation of constitutional rights, and (3) the deprivation occurred without due process of law. There is no question whether Defendant acted under the color of state law in making its decision to revoke Plaintiff's business license. Further, Plaintiff is likely to establish that the decision of Defendant deprived it of a constitutional right. Finally, the Court has found that Plaintiff is likely to succeed on its substantive due process violation claim, satisfying the third prong. Therefore, Plaintiff has established a likelihood of success on is § 1983 claim.

### B. Irreparable Harm

Plaintiff must show that harm is likely in the absence of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365,

375, 172 L. Ed. 2d 249 (2008). Plaintiff argues that it faces harm to its reputation because "the dozens of daily guests that depend on ChristNet for essential services such as food, shelter, and medical care will begin to view the non-profit as unreliable if its operations suddenly cease." [ECF No. 2, PageID.55]. "In evaluating the harm that may occur in the event that the Court does not grant an injunction, the Court must consider three factors: 1. the substantiality of the injury alleged, 2. the likelihood of its occurrence, and 3. the adequacy of the proof provided." *Mercy Health Servs. v. 1199 Health & Hum. Serv. Emps. Union*, 888 F. Supp. 828, 838 (W.D. Mich. 1995).

Defendant argues that Plaintiff's claim for injunctive relief should fail for 2 reasons: (1) Plaintiff has pled a claim for economic damages and (2) Plaintiff had the ability to pursue an appeal of right of the City Council's revocation decision to the state circuit court but failed to do so. [ECF No. 10, PageID.130].

### 1. Economic Damages

As part of Count IV, Plaintiff requests its reasonable attorney's fees and costs as the Court deems just pursuant to 42 U.S.C. § 1988(b). [ECF No. 1, PageID.14]. Defendant argues "[w]here 'any damages would be economic in nature and fully compensable monetarily,' there is 'no potential for irreparable harm.'" [ECF No. 10, PageID.130, quoting *Taubman Co. v. Webfeats*, 319 F.3d

14

770, 778 (6th Cir. 2003)]. Therefore, Defendant maintains that Plaintiff cannot show irreparable harm because Plaintiff has requested monetary relief. *Id*.

Defendant is misled. Plaintiff does not suggest that the monetary relief sought will fully compensate it for the injuries resulting from the claims made in the Complaint. Plaintiff argues that it will suffer harm to its reputation and the Sixth Circuit has held that "interference with customer relationships and damage to reputation are precisely the sorts of injuries [that] are difficult to quantify monetarily, and thus constitute irreparable harm." *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503–04 (6th Cir. 2022). The Court rejects Defendant's argument that Plaintiff cannot maintain its motion for relief because it has requested minimal economic damages.

### 2. Administrative Appeal

Defendant also argues that Plaintiff's request for preliminary injunction should be denied because Plaintiff failed to exercise a right to an administrative appeal under the Michigan Constitution. [ECF No. 10, PageID.130]. Defendant relies on Article VI, §28, which states:

> All final decisions, findings, ruling and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in

15

cases where a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

Mich. Const. 1963 Art. VI, §28. "To determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine whether they are similar." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013).

Plaintiff argues that "Defendant's actions at the City Council meeting were not 'quasi-judicial' in nature." [ECF No. 12, PageID.341]. Plaintiff argues that "[q]uasi-judicial proceedings include procedural characteristics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents." *Id*. at PageID.342 quoting *Attitude Wellness, LLC v. Vill. Of Edwardsburg*, No. 355767, 2021 WL 5498680, at *3 (Mich Ct. App. Nov. 23, 2021) (citing *Natural Resources Defense Council v. Dep't of Environmental Quality*, 300 Mich. App. 79, 86 (2013)). Therefore, it is Plaintiff's position that Art. VI, § 28 does not apply.

The meeting minutes provided by Defendant show that there were several topics discussed at the May 21, appeal hearing. [ECF No. 10-9, PageID.307-312]. It is unclear what amount of time was dedicated to Plaintiff's appeal of the mayor's

decision to revoke its business license. Taking as true, Plaintiff's assertion that it was only given six minutes to advocate on its behalf, the fact that general members of the public were able to speak, and Plaintiff was not able to submit documents, it appears that the May 21, 2024, hearing was not judicial or quasi-judicial and Art. VI, §28 does not apply.

Though Defendant's arguments against irreparable harm fail, Plaintiff has equally failed to show that irreparable harm to its reputation is likely to occur. Plaintiff provides services to individuals in need of "essential services such as food, shelter, and medical care." [ECF No. 2, PageID.55]. Plaintiff argues that in the absence of a preliminary injunction and the closing of Plaintiff's doors, its patrons will likely lose trust in Plaintiff and view it as unreliable. *Id*. Plaintiff argues that it will be difficult to "re-establish these vital community connections if and when the day center is able to reopen." *Id*. This is unlikely.

Plaintiff asserts that it is the "only facility to which the homeless population in Taylor can turn for support." *Id*. at PageID.54. Further, Plaintiff has not shown that fewer patrons will impact its ability to operate. This is not a situation where the individuals that Plaintiff services can turn to another business to receive the services provided by Plaintiff. By Plaintiff's own account, it has no competitors in the City of Taylor. It is more likely that Plaintiff's patrons will be happy to return

to its facility if it is able to reopen. Therefore, Plaintiff has failed to establish a likelihood of irreparable harm in the absence of preliminary injunction.

### C. Balancing of the Harms and Public Interest

Plaintiff argues that in the absence of a preliminary injunction, it will suffer "significant, irreparable harm[;]" however, the Court has determined that Plaintiff's stated harm to its reputation is unlikely to occur. [ECF No. 2, PageID.56]. Nevertheless, the Court acknowledges that Plaintiff will lose its business interest. Defendant argues that a preliminary injunction preventing it from revoking Plaintiff's business license will result in a continued risk of harm to the public and Plaintiff's patrons in the form of tent encampments, trash, and disturbances. [ECF No. 10, PageID.131]. On balance, Plaintiff's harm narrowly outweighs Defendant's harm.

Turning to the public interest, the reasons stated by Defendant in opposition to preliminary injunction, actually support the issuance of such. Defendant argues that it faces strains on resources after Plaintiff's business hours. If Defendant is allowed to move forward with revoking Plaintiff's license, it is likely that the issues Defendant complains of will occur more often and further cripple Defendant's ability to preserve the health, safety and welfare of the City's residents and visitors. In fact, there is likely to be an increase in dumpster diving, tent

18

encampments, and reliance on City resources in Plaintiff's absence. The public interest would be best served by issuance of a preliminary injunction because it would at least provide a place for homeless individuals in the City of Taylor to access meals, warmth as the fall and winter months are approaching, and the opportunity to take advantage of personal development services to be productive citizens.

On balance, the Court finds that Plaintiff is entitled to a preliminary injunction pending the outcome of this litigation.

## IV. CONCLUSION

In light of the foregoing,

IT IS SO ORDERED that Plaintiff's Motion for Preliminary Injunction [ECF No. 2] is GRANTED.

IT IS FURTHER ORDERED that Defendant shall not revoke Plaintiff's business license until a final decision is reached in this matter.

SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: January 16, 2025